UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-13709 |
| Plaintiff, | Stephanie Dawkins Davis<br>United States District Judge |
| v. | |
| ABDUL JABBAR NAJI SHALABI,<br>f/k/a Abdul Jabbar Naji Abdul Jaber, | David R. Grand<br>United States Magistrate Judge |
| Defendant. | |
| _____/ | |

**OPINION AND ORDER GRANTING PLAINTIFF'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 6)</u>**

**I.     Introduction**

On December 18, 2019, Plaintiff United States of America filed this action to revoke and set aside the U.S. Citizenship and Certificate of Naturalization of Defendant Abdul Jabbar Naji Shalabi f/k/a Abdul Jabbar Naji Abdul Jaber pursuant to 8 U.S.C. § 1451(a).  (ECF No. 1).  The government filed a motion for judgment on the pleadings based on certain admissions Shalabi made in his answer to the instant complaint.  (ECF No. 6).  Shalabi filed a response (ECF No. 7) and the government filed a reply (ECF No. 8).  Although the court noticed the parties for a hearing on the instant motion (ECF No. 9), it later determined, pursuant to L.R. 7.1(f)(2), that the matter is capable of resolution on the papers and thus a

hearing was not necessary.  For the foregoing reasons, the court **GRANTS** the government's motion for judgment on the pleadings to the extent discussed below.

## II.     Factual Background

Shalabi was admitted to the United States as a lawful permanent resident in June 1997.  (ECF No. 5, PageID.53, ¶ 3).  On an unknown date between June 1997 and January 1, 2001, Shalabi left the United States to study at Bir Zeit University in the West Bank.  (ECF No. 5, PageID.55, ¶ 22).  On or about October 18, 2002, Shalabi was arrested by Israeli authorities.[1]  (ECF No. 5, PageID.55, ¶ 23).  After a plea agreement with the Israeli Military Court, Shalabi was sentenced to prison and incarcerated from approximately October 18, 2002 through April 6, 2003.[2]  (ECF No. 5, PageID.55, ¶ 26,27).  Shalabi returned to the United States on an unknown date, but no earlier than April 6, 2003.  (ECF No. 5, PageID.55, ¶ 28).  Accordingly, based on his own admission, Shalabi lived outside of the United States from at least January 1, 2001 until April 6, 2003.

---

[1] Shalabi contends that the Israeli authorities falsely accused him, a matter that this court need not address for resolution of this motion.  (ECF No. 5, PageID.55, ¶ 24).

[2] In his answer to the government's allegation that he was incarcerated "from on or about October 18, 2002, through on or about, April 6, 2003," Shalabi answered that he was incarcerated for a period of "somewhat less than seven (7) months."  (ECF No. 5, PageID.55, ¶ 27).

On or about May 28, 2005, while in the United States, Shalabi applied for naturalization with the U.S. Citizenship and Immigration Services ("USCIS"). (ECF No. 5, PageID.53, ¶ 4). In its Complaint and its Affidavit of Good Cause in Support of Complaint, the government alleges that in response to questions about time spent outside of the United States in the preceding five years, Shalabi indicated that he had only been absent for a total of 160 days. (ECF No. 1, PageID.3-4, ¶¶ 11-14; ECF No. 1-1, PageID.33, ¶ 9). In his Answer, Shalabi admits that the questions about periods of absence from the United States appeared on the application, but he neither admits nor denies the government's claims about what his responses were. (ECF No. 5, PageID.54, ¶¶ 4-7). USCIS approved Shalabi's application for naturalization on November 16, 2005. (ECF No. 5, PageID.55, ¶ 20). Based on this approval, Shalabi was admitted as a United States citizen and was issued a Certificate of Naturalization under Certificate No. 29517121 on December 6, 2005. (ECF No. 5, PageID.55, ¶ 21).

### III. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule

12(b). *See EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted)).

In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be

4

enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

IV. Discussion

    A. **Legal Background**

Title 8 U.S.C. § 1451(a) provides in pertinent part:

> It shall be the duty of the United States attorneys ... to institute proceedings ... for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were *illegally procured* or were procured by concealment of a material fact or by willful misrepresentation....

8 U.S.C. § 1451(a) (emphasis added).  In other words, subsection (a) requires revocation of United States citizenship that was "illegally procured." *Fedorenko v. United States*, 449 U.S. 490, 493 (1981).  "[D]istrict courts lack equitable discretion to refrain from entering a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally…" *Id*. at 517.  The failure to comply with all the congressionally-imposed prerequisites to the acquisition of citizenship renders the certificate of citizenship "illegally procured"

5

for purposes of 8 U.S.C. § 1451(a). *Id*. at 505; *see also United States v. Ginsberg*, 243 U.S. 472, 475 (1917) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with....").

Title 8 U.S.C. § 1427 is a congressionally-imposed prerequisite to the acquisition of citizenship. Under subsection (b) of this statute, an applicant for naturalization cannot have been absent for a continuous period exceeding six months during the five years immediately preceding the date of filing his application (the "continuous residence" requirement). 8 U.S.C. § 1427(b); *see also United States v. Ahmed*, 735 Fed. Appx. 863, 864 (6th Cir. 2018) (discussing the continuous residence requirement).

B. **Shalabi's Non-Compliance with 8 U.S.C. § 1427**

Shalabi was not a continuous resident within the meaning of 8 U.S.C. § 1427(b) and was thus ineligible for citizenship at the time that he applied for naturalization. As noted, Shalabi filed his application for naturalization on May 28, 2005. (ECF No. 5, PageID.53, ¶ 4). Therefore, to satisfy the requirements of section 1427(b), Shalabi could not have been absent for a continuous period of longer than six months between May 28, 2000 and May 28, 2005 (the "Five-Year Period"). Shalabi admits that he left the United States no later than January 1,

2001 and that he did not return until at least April 6, 2003. (ECF No. 5).³ Thus, at minimum, Shalabi was absent from the United States for a continuous period of roughly two years and three months during the five years immediately preceding his application for citizenship. Since his absence exceeds the 6-month maximum allowed by the statute and it occurred within the Five-Year Period, Shalabi did not meet the "continuous residence" requirement under 8 U.S.C. § 1427(b) at the time of his application. Indeed, Shalabi concedes in his response that he failed to fulfil this requirement. (ECF No. 7, PageID.77).

Given Shalabi's failure to meet a "congressionally imposed prerequisite" to the acquisition of citizenship, 8 U.S.C. § 1427, Shalabi's United States citizenship was "illegally procured" for the purposes of 8 U.S.C. § 1451(a). *See Fedorenko v. United States*, 449 U.S. 490, 505. In situations such as this, the court has no discretion, *id.* at 517, and therefore must enter an order revoking Shalabi's citizenship.

---

³ While the government's complaint characterized the illegal procurement as citizenship having been obtained by concealment of a material fact or willful misrepresentation, amongst other things, and Shalabi, in his Answer, neither admitted nor denied the facts tending to establishing concealment or willful misrepresentation, under the Supreme Court's holding in *Fedorenko*, his admission that he was, in fact, ineligible for citizenship (i.e. outside of the country for over two years in the preceding five) at the time of his application is enough standing alone to provide just cause for revocation. Shalabi's failure to meet a congressionally-imposed prerequisite to citizenship obviates the need for further analysis concerning materiality and/or willfulness here.

Though the government has stated several other grounds in Counts I-IV upon which it claims Shalabi's citizenship is subject to revocation, in view of the court's finding of illegal procurement and required revocation, the court need not address those alternative grounds for revocation. They are thus dismissed as moot.

## V. Conclusion

For the reasons set forth above, the court **GRANTS** the government's motion for judgment on the pleadings.

Accordingly, **IT IS ORDERED THAT** the plaintiff's motion for judgment on the pleadings is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the government's request to revoke and set aside the order admitting to citizenship and to cancel Certificate of Naturalization No. 29517121 is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the grant of United States citizenship to defendant Abdul Jabbar Naji Shalabi f/k/a Abdul Jabbar Naji Abdul Jaber is **REVOKED** and is **SET ASIDE** and that the defendant's certificate of naturalization is **CANCELED**.

**IT IS FURTHER ORDERED THAT** Abdul Jabbar Naji Shalabi f/k/a Abdul Jabbar Naji Abdul Jaber must surrender and deliver his certificate of naturalization and all other indicia of United States citizenship, including his United States passport.

**IT IS SO ORDERED**.

Dated: July 27, 2020                                    /s/ Stephanie Dawkins Davis
                                                              Stephanie Dawkins Davis
                                                              United States District Judge